①

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

Portland
_____ DIVISION

Derek Bluford
_____
*(Enter full name of plaintiff)*

Plaintiff,

v.

Warden DeWayne Hendrix, A.W. A. Bills,
CMC Mrs. Bunsel, Dr. Andrew Grasley, Unit
Manager Mr. Sponseler, Dr. Campagna, Counselor
A. Rodriguez, Couselor B. Cray, Case Manager
Mrs. Ayala-Pena, SIS Prock Jr., and DOES 1-99
*(Enter full name of ALL defendant(s))*

Defendant(s).

Civil Case No. 3:22-cv-01005-SI
_____
(to be assigned by Clerk's Office)

COMPLAINT FOR VIOLATION OF CIVIL
RIGHTS (PRISONER COMPLAINT)

Jury Trial Demanded
☑Yes        ☐No

## I. PARTIES

    *List your name, address, and telephone number below, and the same information for each defendant. Make sure that the defendant(s) listed below are identical to those contained in the caption of the complaint. Attach additional sheets of paper if necessary.*

**Plaintiff**       Name: Derek Bluford

               Street Address: FCI Sheridan, P.O. Box 5000

               City, State & Zip Code: Sheridan, OR 97378

               Telephone No.: n/a

**Defendant No. 1**    Name: Warden DeWayne Hendrix

Street Address: 27072 SW Ballston Road

City, State & Zip Code: Sheridan, OR 97378

Telephone No.: Unknown


**Defendant No. 2**    Name: Assistant Warden A. Bills

Street Address: 27072 SW Ballston Road

City, State & Zip Code: Sheridan, OR 97378

Telephone No.: Unknown


**Defendant No. 3**    Name: Case Manager Coordinater Mrs. Bunsel

Street Address: 27072 SW Ballston Road

City, State & Zip Code: Sheridan, OR 97378

Telephone No.: Unknown


**Defendant No. 4**    Name: Dr. Andrew Grasley

Street Address: 27072 SW Ballston Road

City, State & Zip Code: Sheridan, OR 97378

Telephone No.: Unknown

✱ See Attachment Titled "Defendants 5-11"

## II. BASIS FOR JURISDICTION

Under 42 U.S.C. § 1983, you may sue state or local officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." Under *Bivens v. Six Unknown Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), you may sue federal officials for the violation of certain constitutional rights.

A. You are bringing suit against (*check all that apply*):

☑ Federal officials (a *Bivens* claim)

☐ State or local officials (a § 1983 claim)

Complaint for Violation of Civil Rights (Prisoner Complaint)
[Rev. 01/2018]

2

Defendants 5-11

Defendant No. 5: Name: Unit Manager Mr. Sponselor
Street Address: 27072 SW Ballston Road
City, State & Zip Code: Sheridan, OR 97378
Telephone No.: Unknown

Defendant No. 6    Name: Dr. Campagna
Street Address: 27072 SW Ballston Road
City, State & Zip Code: Sheridan, OR 97378
Telephone No.: Unknown

Defendant No. 7    Name: Correctional Counselor A. Rodriguez
Street Address: 27072 SW Ballston Road
City, State & Zip Code: Sheridan, OR 97378
Telephone No.: Unknown

Defendant No. 8    Name: Correctional Counselor Brent Cray
Street Address: 27072 SW Ballston Road
City, State & Zip Code: Sheridan, OR 97378
Telephone No.: Unknown

Defendant No. 9    Name: Case Manager Mrs. Ayala-Pena
Street Address: 27072 SW Ballston Road
City, State & Zip Code: Sheridan, OR 97378
Telephone No.: Unknown

Defendant No. 10    Name: SIS Lt. David Proch Jr.
Street Address: 27072 SW Ballston Road
City, State & Zip Code: Sheridan, OR 97378
Telephone No.: Unknown

Defendant No. 11    Name: DOES 1-99
Street Address: 27072 SW Ballston Road
City, State & Zip Code: Sheridan, OR 97378

B.  What federal constitutional, statutory, or treaty right(s) is/are at issue?

The 1st, 4th, 5th, 8th and 14th Amendment's, as well as the Equal Protection Clause, and Americans with Disabilites Act.

## III.  STATEMENT OF CLAIMS

### Claim I

State here as briefly as possible the _facts_ of your case. Describe how each defendant was involved, when the conduct occurred, and any injuries you have suffered as a result. It is not necessary to give any legal arguments or cite any cases or statutes.

See attachment titled "Claim 1"

### Claim II

State here as briefly as possible the _facts_ of your case. Describe how each defendant was involved, when the conduct occurred, and any injuries you have suffered as a result. It is not necessary to give any legal arguments or cite any cases or statutes.

See attachment titled "Claim 2"

Complaint for Violation of Civil Rights (Prisoner Complaint)
[Rev. 01/2018]

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

### Claim III

*State here as briefly as possible the facts of your case. Describe how each defendant was involved, when the conduct occurred, and any injuries you have suffered as a result. It is not necessary to give any legal arguments or cite any cases or statutes.*

See Attachment titled "Claim 3"

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

*(If you have additional claims, describe them on another piece of paper, using the same outline.)*

 Additional Claims attached

Complaint for Violation of Civil Rights (Prisoner Complaint)
[Rev. 01/2018]

Claim 1

In September of 2021, Federal Correctional Institution Sheridan was experiencing yet another Covid-19 outbreak. The Warden, DeWayne Hendrix was aware of this and had modified operations at the institution.

On or about September 3rd, 2021, the 2A Housing Unit had inmates showing signs of Covid-19. This was observed by Derek Bluford, the Plaintiff. Due to Mr. Bluford's heart conditions and concern for his health, he immediately notified the Unit 2 staff by speaking with and sending "Inmate Request to Staff" forms to Correctional Counselor Brent Cray, and Case Manager Mrs. Ayala Pena. Mr. Bluford's efforts were ignored by the staff. Furthermore, Mr. Cray warned Mr. Bluford about trying to cause trouble for him by complaining about the coronavirus. Bluford had previously tried to file a "Request for Administrative Remedy" regarding Covid-19 concerns, but it was rejected by Mr. Cray and he was threatened that if he tried to continue his complaint which involved staff breaking CDC Covid-19 & BOP Policy guidelines, that "there would be hell to pay".

Mr. Bluford then began to contact Other BOP, Federal Correctional Institution Sheridan departments such as Medical and Health services warning them about the cases/people infected with Covid-19 in his housing unit.

On September 7, 2021 the medical staff came into the 2A Housing Unit, tested a few inmates and confirmed cases

of Covid-19. Several inmates were then removed from the 2A Housing Unit and housed in the gym. This process occured once more the following day. Despite Mr. Bluford's request, he was not tested, and was informed by medical staff that the institution did not have enough Covid-19 test for all inmates. Mr. Bluford then wrote Dr. Andrew Grasley and informed him that he was not feeling well, citing numerous Covid-19 symptoms, and fear over what could happen due to Mr. Bluford's medically documented heart conditions.

For the next few days Mr. Bluford continued to contact medical and 2A Housing Unit staff requesting medical help. All of Mr. Bluford's efforts were ignored.

On September 9, 2021, Mr. Bluford's roommate Charles Topps was removed from the 2A Housing Unit due to testing positive for Covid-19. Despite Mr. Bluford and Mr. Topps being locked in the same room for several days, everyday for 23 hours and 45 minutes, medical and housing unit staff still refused to test Mr. Bluford for Covid-19, ignoring his request and pleas for help.

Instead of providing Mr. Bluford with medical services, staff then placed a sign (one of two) on his door room stating "The separated person is NOT showing signs of illness." Not only was that sign false, it intentionally, wantonly, and negligently put not only other inmates lives in danger, but staff as well.

On September 13th, 2021, Mr. Bluford was found by staff barely responsive. An emergency respiratory encounter was performed (Mr. Bluford was revived), and Mr. Bluford was taken to the hospital via a third party emergency ambulance.

Mr. Bluford tested positive for Covid-19. Since then Mr. Bluford has been wheelchair bound, and experiencing chronic pain and symptoms identified as "long covid".

Mr. Hendrix, Mr. Cray, Mrs. Ayala-Pena and Dr. Grasley were all made aware of the potential Covid-19 outbreak, yet failed to take meaningful preventive measures. By this time the institution had already experienced several prior outbreaks, yet still, failed to come up with an adequate plan to face the coronavirus.

Despite Mr. Bluford personally contacting these individuals, no action was taken. They (Mr. Hendrix, Mr. Cray, Mrs. Ayala-Pena, and Dr. Grasley) had a duty to provide reasonable safety, medical services, and not deprive Mr. Bluford of his constitutional rights. Their actions caused Mr. Bluford to contract Covid-19 which lead to him suffering numerous physical and mental damages, all due to the Defendants breach of duty.

Furthermore, their actions were cruel and unusual, and resulted in Mr. Bluford facing/an suffering cruel and unusual punishment, and caused Mr. Bluford pain and suffering.

Claim 2

On or about September 14th, 2021, Mr. Bluford returned to Federal Correctional Institution Sheridan from Salem Emergency Hospital. Mr. Bluford was prescribed a total of 5 medications over the course of the following 4 months, to help him with his chronic pain, naseau, vomiting, and other issues. Despite being prescribed 5 medications, Mr. Bluford only ever received 1 out of those 5 during the following 10 months.

As Mr. Bluford was wheelchair bound, he consistently wrote Dr. Grasley and others (the general medical department) complaining about not receiving his medications, and requesting them. Mr. Bluford also wrote the Warden, Mr. DeWayne Hendrix, alerting him to the situation. All of Mr. Blufords request were ignored and not replied to.

Dr. Grasley and his department ignored Mr. Blufords dozens of medical request from September until November, at which point, the institution was contacted by the U.S. Attorneys Office regarding Mr. Blufords health, due to Mr. Bluford filing a compassionate release.

The initial concern was that Mr. Bluford was originally scheduled for a follow-up 1-week after he was taken to the emergency room, after testing positive for Covid-19, per Mr. Blufords medical records. However, at that point, months had passed (September and October) and Dr. Grasley still had not called Mr. Bluford for a follow-up.

Mr. Bluford was then scheduled and called to the medical department at the institution. Mr. Bluford was informed that he would need physical therapy due to his legs, however, that the Federal Correctional Institution Sheridan did not offer such services. Mr. Bluford was informed that most likely his legs would "decondition", (which they now have).

During this visit, Mr. Bluford still was not seen by the Dr. Grasley. Mr. Bluford however, was prescribed medications, to which all he never received.

Mr. Bluford would go to submit over 30 additional medical request both electronically and written to Dr. Grasley and his medical department over the course of the following 8 months (November to June), only to be seen once more, and yet adequate medical services denied.

Again, Mr. Bluford wrote Warden DeWayne Hendrix to ask for help. Mr. Blufords request were ignored.

Mr. Bluford was scheduled to be taken to the hospital in March of 2022, however, his appointment was cancelled by the institution (Hendrix and Dr. Grasley) due to the institution not having enough staff available nor employed to take Mr. Bluford.

Mr. Hendrix and Dr. Grasley had a duty to provide Mr. Bluford medical care, yet breached that duty, in which caused Mr. Bluford numerous physical and medical damages. Their actions resulted in Mr. Bluford facing/suffering cruel and unusual punishment, and violated his constitutional rights, and caused Mr. Bluford pain and suffering.

Claim 3

On or about November of 2021, Dr. Grasley and the medical department altered and/or falsified Mr. Blufords medical records. These actions continued for several months and ultimately caused Mr. Blufords motion for Compassionate Release to be denied, as the court relied on the information found in these records.

Mr. Bluford was informed by Mr. Cray that he had taken steps with the medical department to block any the chance of Mr. Blufords motion being granted, and removing any liability, since by that time Mr. Blufords attorney had been calling regarding potential litigation due to the institutions actions.

Dr. Grasley, Mr. Cray, and DOES 1-99 acted maliciously, cruelly, and negligently to harm Mr. Bluford. They further breached their duties and violated Mr. Blufords constitutional rights, which caused Mr. Bluford numerous physical and mental damages. Furthermore, their actions caused Mr. Bluford to face/suffer cruel and unusual punishment, and were illegal.

Mr. Bluford could have been granted home confinement by the court, which would have allowed Mr. Bluford access to the medications that he was prescribed (but never received) by medical professionals, and accessed medical services and treatment that Dr. Grasley failed to provide. However, Mr. Bluford has been forced to deal with the chronic pain and detoriating medical state, all due to the illegal actions of Dr. Grasley and Mr. Cray, which constitutes pain and suffering.

Claim 4

On or about September 21, 2021, Mr. Bluford was being housed in the Federal Correctional Institution Sheridan Gym due to testing positive for Covid-19.

Despite the gym having CDC guidelines posted in the gym, most were not being followed. Water was barely provided to inmates, and beds were less than 6ft apart. At some points there were over 50+ inmates living in the gym, all infected with Covid-19.

There was only one shower available, which was a mop/broom sink, that was converted and not ADA compliant.

Mr. Bluford is protected by the Americans with Disabilities Act as he can not walk and is medically wheelchair bound. Mr. Bluford wrote Warden DeWayne Hendrix, Mr. Cray, Mrs. Ayala-Pena, and notified gym staff (DOES 1-99) that he couldn't use that shower and requested help. None was provided.

While attempting to take a shower, Mr. Bluford fell and injured himself which caused him to pass out briefly. Upon regaining consciousness, Mr. Bluford was contacted by Correctional Officer Pike, who came into the mop and broom closet shower, picked Mr. Bluford up, assisted him getting dressed, and rolled him in his wheelchair out.

Despite Officer Pike calling for medical services and filing a Incident Report, medical never came. Mr. Bluford bled from his right ear and had severe headaches and naseau for months. All of Mr. Blufords medical request were ignored.

Mr. Hendrix, Mr. Cray, Mrs. Ayala-Pena and Dr. Grasley had a duty to provide or get Mr. Bluford medical services. Due to their actions, they breached their duty, which caused Mr. Bluford numerous physical and mental damages, and pain and suffering.

The facility in which Mr. Hendrix is in control of is not ADA compliant and violates several clauses of the laws protecting people with disabilities.

Mr. Blufords medical records were later altered regarding this event.

Their actions were cruel and unusual, which caused Mr. Bluford to face/suffer cruel and unusual punishment, and violated his constitutional rights.

(14)

Claim 5

On or about September 30, 2021, Mr. Bluford was moved from the gym to the 3A Housing Unit. The Warden, DeWayne Hendrix ordered that all inmates be moved from the gym as a result of an embarrassing court order inspection, which resulted in government officials finding Federal Correctional Institution Sheridan being "Inhumane" and "Resulting in widespread distress and harm" (See Petitioners Status Report of October 8, 2021, Case No 3:20-cv-00712-SB, Stirling v. Hendrix).

Mr. Bluford was placed in a two man cell with yet another wheelchair bound individual who was on a oxygen tank. Both Mr. Bluford and his roommate had lower bunk medical chronos, yet were forced into a room with bunk beds.

After several failed attempts to be moved, both Mr. Bluford and his roommate were forced to remain in the cell. As Mr. Bluford attempted to try and get on the higher bunk bed, due to his roommate being over 60 years old and obese, Mr. Bluford fell to the floor and injured himself. Mr. Bluford requested medical, but was informed that nurses and doctors had already left for the day, and that he (Mr. Bluford) should just sleep on the floor. With wheelchairs in the already small room, Mr. Bluford was unable to get his mattress to fit on the floor, and had to simply sleep on the bare floor.

The following days Mr. Bluford wrote medical, housing unit staff, and the Warden, DeWayne Hendrix regarding the issue. All of Mr. Blufords ~~many~~ request were ignored until he mentioned contacting his lawyer. Then housing unit staff had medical come to the housing unit to try and force Mr. Bluford to sign a waiver for the day that he fell.

Mr. Bluford was forced to stay in that cell for several weeks. The cell was not ADA compliant.

The Warden, DeWayne Hendrix, Dr. Grasley and others (DOES 1-99) had a duty to provide reasonable safety and care, medical service, and make ADA accommendations for Mr. Bluford. They breached their duties and violated ~~numerou~~ several clauses of the Americans with Disabilities Act, which caused Mr. Bluford numerous physical and mental damages.

Furthermore, their actions ~~w~~ caused ~~m~~ Mr. Bluford to face/suffer cruel and unusual punishment, and violated his constitutional rights, and caused Mr. Bluford pain and suffering.

Mr. Blufords bruises and physical pain healed over time, however, Mr. Bluford was provided no medical services, and forced to sleep on a bare floor.

(16)

Claim 6

Since June 2021, when Mr. Bluford raised his first complaint to Mr. Cray, Mrs. Ayala-Pena and Warden DeWayne Hendrix, regarding a major security score error that he found, Mr. Cray and Mrs. Ayala-Pena have intentionally been causing problems for Mr. Bluford, and intentionally scoring him wrong.

Mr. Bluford found that he was being housed at a "Medium Security Level" prison, which housed murderers, rapist, child molesters, bank robbers and even drug cartels, when in fact Mr. Bluford was scored wrong, and should have been housed at a "Low Security Level" prison, with less violent people.

The Bureau of Prisons overlooked that Mr. Bluford had earned his high school diploma, and therefore scored him incorrectly by adding +2 security level points to Mr. Blufords base score. These additional points moved Mr. Bluford from a "Low" security level, to a "Medium", therefore placing him with more violent offenders.

Upon Mr. Cray and Mrs. Ayala-Pena learning this information, they intentionally took no action to correct it, as by this point they were already frustrated with Mr. Blufords persistence regarding the matter. Mr. Blufords attorney, even contacted Mr. Cray, Mrs. Ayala-Pena, and the Case Manager Coordinator Mrs. Bunsel alerting them of this issue. Yet, no action was taken, and Mr. Bluford remained at the prison.

Mr. Bluford was then warned and threatened by Mr. Cray that he and Mrs. Ayala-Pena could make things worse for him if Mr. Bluford continued on raising the issue and having his attorney call. Mr. Cray informed Mr. Bluford that they would intentionally score him so that he would not be able to go to a camp at his next scoring meeting, which is a "Minimum Security Level", and instead lower his score to only 13 points. Mr. Bluford then spoke with Mrs. Ayala-Pena, informed her what Mr. Cray said, and only received the same response, only indirectly.

As Mr. Bluford suffers from an anxiety disorder, he met with Dr. Bindl in the psychology department and reported the matter. Dr. Bindl made note of the threat(s) and said that he could report them.

Over the next few months Mr. Bluford contracted Covid-19, filed more complaints, and ultimately received dozens of threats and acts of retaliation against him from Mr. Cray and Mrs. Ayala-Pena.

Ultimately, in November of 2021, Mr. Cray and Mrs. Ayala-Pena did exactly what they warned/threatened Mr. Bluford that they would do. Instead of lowering Mr. Blufords score to 11 (Minimum Security Level), they lowered his score to 13 (Low Security Level). Furthermore, they made Mr. Bluford sign a $400.00 per month contract for FRP, with no payment date, which originally was a $25.00 per quarter payment.

Mrs. Ayala-Pena then placed a Management Variable on Mr. Bluford, and ~~iiiiiii~~ put in a request to transfer Mr. Bluford to a "Low Security Level" prison.

In January of 2022, Mr. Bluford was moved to the Special Housing Unit (known as the "SHU") after inmates were extorting him due to Mr. Cray informing inmates that Mr. Bluford cooperated with the FBI.

The average amount of time that an inmate spends in the Bureau of Prisons SHU is 3.98 weeks. Mr. Cray informed Mr. Bluford that he would make sure that he stayed in the SHU for "many months". Mr. Bluford stayed in the SHU for over 25 weeks, as a non-violent offender who was not there for disciplinary reasons.

Due to complaints and concerns, Mr. Blufords transfer paperwork was finally submitted ~~correctly~~, as previous transfer paperwork did not direct for Mr. Bluford to get transferred to a "Low Security Level", nor include a CIM.

Despite Mr. Blufords complaints and pleas to the Warden, DeWayne Hendrix, Mr. Sponselor, and Mrs. Ayala-Pena, and Mr. Cray, they intentionally caused or allowed Mr. Blufords constitutional rights to be violated. These actions caused them to breach their duties, which caused Mr. Bluford numerous physical and mental damages. Some of their actions were intentional and maliciously carried out, which caused Mr. Bluford pain and suffering. Mr. Bluford was assaulted and battered, contracted Covid-19, was denied medical, suffered chronic pain from negligence, was sexually assaulted and more, all due to him exercising his rights.

Claim 7

From June 2021 to June 2022, Mr. Bluford observed numerous staff intentionally not wearing their mask, despite a known Covid-19 pandemic, and BOP policy requiring them to do so, to decrease the risk of infection and another Covid-19 outbreak from occurring at Federal Correctional Institution Sheridan.

Mr. Bluford notified the Warden, DeWayne Hendrix, Mr. Cray, Mrs. Ayala-Pena, Mr. Sponselor, and DOES 1-99, yet no action was taken, and Mr. Bluford was only threatened, ignored, and retaliated against.

Mr. Blufords attorney even contacted the Warden DeWayne Hendrix, the Bureau of Prisons Regional Western Office and General Counsel regarding these issues. "Litigation Hold" notices were also served on all parties for all security video footage, and Mr. Blufords electronic messages to staff.

Ultimately, the Defendants actions lead to Mr. Bluford getting infected with the coronavirus and experiencing/ suffering numerous physical and mental damages. The Defendants actions were negligent, and wantly, which resulted in cruel and unusual punishment, and violated ~~thru Reform~~ Mr. Blufords constitutional rights, causing him pain and suffering. Til this day, Mr. Bluford still suffers from the physical pain of long-covid symptoms caused by staff not wearing mask and infecting inmates with Covid-19.

Claim 8

From June 2021 to January 2022, Mr. Bluford observed numerous staff intentionally mixing quaratined (infected) inmates, with non-quaratined (non-infected) inmates, which was against BOP policy and simply cruel and unusual.

Mr. Bluford notified the Warden, DeWayne Hendrix, Mr. Cray, Mrs. Ayala-Pena, Mr. Sponselor, and others (DOES 1-99), yet no action was taken, and Mr. Bluford was only threatened, ignored, and retaliated against.

Mr. Blufords attorney even contacted the Warden, DeWayne Hendrix, the Bureau of Prisons Regional Western Office and General Counsel regarding these issues. "Litigation Hold" notices were also served on all parties for all security video footage, and Mr. Blufords TRULINCS electronic messages to staff.

Ultimately, the Defendants actions lead to Mr. Bluford getting infected with the coronavirus and experiencing/ suffering numerous physical and mental damages. Furthermore, their actions were grossly negligent, cruel and unusual, and violated the plaintiffs (Mr. Blufords) constitutional rights, which caused him pain and suffering.

Til this day Mr. Bluford still suffers from the physical pain caused by long-covid symptoms, due to the Defendants actions.

Claim 9

After Mr. Bluford contracted COVID-19 and entered a phase of depression and anxiety due to threats, living conditions, and retaliation, Mr. Bluford contacted psychology services, and began counseling with Dr. Bindl.

Once Mr. Cray became aware that Mr. Bluford had confided in Mr. Bindl and that they had made notes of Mr. Crays threats, he informed Mr. Bluford that he would no longer be able to see Dr. Bindl. Mr. Bluford challenged Mr. Cray and said that he didn't have that authority. Mr. Cray in turn said that he was very close with Dr. Campagna who is over the entire psychology department, and to "mark his words."

For the next 8 months (November - June) Mr. Bluford would go without another counseling session, despite his over two dozen written and electronic request, the Bureau of Prisons identifing Mr. Bluford as an inmate who has experienced a traumatic event (covid-19 and being revived), and the institution knowing that Mr. Bluford ~~had~~ has a known and medically documented anxiety disorder. Mr. Bluford sent dozens of request to Dr. Campagna, Dr. Bindl and to the Warden, DeWayne Hendrix. All request were ignored.

The Defendants actions were cruel and unusual, and they breached their duties which caused Mr. Bluford numerous physical and mental issues. Furthermore, their actions were cruel and unusual, and violated Mr. Blufords Constitutional rights, causing him pain and suffering as he could not even seek mental health.

Claim 10

From January 2022 through July 2022, Mr. Bluford was being housed in the SHU, at Federal Correctional Institution Sheridan. The institution is not ADA compliant, and Mr. Bluford is protected under the Americans with Disabilities Act, as he is wheelchair bound and can not walk.

Upon Mr. Bluford arriving to the SHU, he had to have numerous staff pick him up in his wheelchair to carry him throughout the housing unit and to his room/cell.

While housed in the SHU, inmates must be at their room door between 5:00 and 6:00 A.M in order to be signed up for recreation. No clocks are available or even seen by inmates in the SHU. There are no verbal notices or sound indicators to let inmates know that the time is between 5:00 and 6:00 A.M. Even room windows are blocked out so that inmates can not see outside.

Nonetheless, Mr. Bluford has requested and been at his room door numerous times to only be passed by (as staff ~~may~~ may not see him since he's in a wheelchair), or told "No" that he can not go to recreation, because "staff are not going to pick him up and carry him outside", as the SHU doesn't have ramps and is not ADA compliant.

Mr. Bluford hasn't seen the sun or sky, had fresh air, or been allowed recreation for over 6 months. The Defendants including but not limited to Warden Hendrix and DOES 1-99 violated Mr. Blufords constitutional rights, as Mr. Bluford

informed them of this, yet they failed to take action to correct the situation.

The Defendants had a duty, yet breached that duty, which caused Mr. Bluford to be deprived of life and liberty, endure cruel and unusual punishment, and suffer numerous physical and mental damages, all to which violate Mr. Blufords constitutional rights, and cause him pain and suffering.

As Mr. Bluford has been stuck in his room for 6 months (minus 4 brief times out to the laundry room and to meet with staff) his depression and anxiety amplified, and his physical state deteriated.

Claim 11

Since June of 2021, Mr. Blufords attorney had
made numerous attempts to contact the Federal
Correctional Institution Sheridan regarding relocating
Mr. Bluford to a "Low Security Level" institution,
retaliation that Mr. Bluford was experiencing, to discuss
legal action/active cases his client had, and several
other issues.

Upon Mr. Cray finding out that Mr. Bluford and
his attorney was planning on filing a civil suit against
him, Mr. Cray went above and beyond to not allow
Mr. Bluford any more legal calls. From that point, all
of Mr. Blufords "Request for Attorney Calls" were denied,
and all except one call was returned to Mr. Blufords
attorney. Mr. Cray even told Mr. Bluford "All I have to
do is call your attorney on sunday when his office is
closed and I'm in the clear."

This practice went on for over 8+ months. Mr. Bluford
faced numerous adverse actions in his cases due to
Mr. Crays actions, and ultimately had to file his own
motions and legal documents due to Mr. Cray blocking
his (Mr. Bluford) access to his attorney. Mr. Cray even
allowed inmates into Mr. Blufords property to take his
legal resource books.

Upon Mr. Bluford being moved to the SHU, he was

only ever allowed once into the room with a computer to access the law library. However, the computer desk was not ADA compliant (it was on a standing desk) and Mr. Bluford could not really use it without experiencing significant pain, dizziness, and naseau from trying to rise up and lean on it.

Once Mr. Cray found out that Mr. Bluford accessed the law program, he informed Mr. Bluford that that would not happen again.

Mr. Cray even blocked Mr. Bluford from having access to the only legal resource books that he had left in his property (which were 2 from over 15 books).

Mr. Bluford wrote complaints to the Warden, DeWayne Hendrix, Mr. Sponselor, Mr. Cray, Mrs. Ayala-Pena, Mrs. Vancleave, and others (DOES 1-99). All of his (Mr. Bluford) request and complaints were ignored.

The Defendants actions were intentional and malicious. The Defendants breached their duty, violated Mr. Blufords constitutional rights, and caused him to suffer numerous physical and mental damages. Defendants even blocked Mr. Blufords access to grievances (Request for Administrative Remedy) by having him physically harmed, and granting relief to those who injured him. Defendants actions were cruel and unusual, and violated Mr. Blufords constitutional rights, and caused Mr. Bluford pain and suffering.

(26)

Claim 12

On January 25, 2022, Mr. Bluford was transferred to the SHU at the Federal Correctional Institution Sheridan, due to a "threat assessment". Inmates had been extorting Mr. Bluford for cooperating with the FBI. Mr. Bluford was informed by those inmates extorting him that Mr. Cray disclosed to them that he (Mr. Bluford) cooperated. Mr. Cray had threatened Mr. Bluford previously that he would disclose this information to inmates if Mr. Bluford continued on with his complaints (Request for Administrative Remedies) and having his (Mr. Bluford) attorney call.

Mr. Cray then informed Mr. Bluford, that he would see to it that Mr. Bluford would spend "many months" in the SHU, as he could influence the investigation time period from 30 days to 90 days, (which he did), by talking to his friends in SIS and having them kicking the case/investigation months down the road. Mr. Cray then continued on that he, the Unit Team (Mrs. Ayala-Pena and Mr. Sponselor), and SIS could then "accidentally mess up his transfer paperwork" which would cause Mr. Bluford to remain in the SHU, under 24 hour lockdown, 7 days per week, even longer. All of Mr. Cray threats came true. Mr. Bluford has been in the SHU for over 25 weeks, as a non-violent offender, who was only placed in the SHU for safety. The average amount of time an inmate spends in the SHU, in BOP is 3.98 weeks.

Mr. Bluford has spent more than 6 times that amount in the SHU, despite not being there for disciplinary reasons. Inmates who have committed new crimes, assaulted and battered others (inmates/staff), smuggled drugs, and made alcohol spent less time in the SHU, when compared to Mr. Bluford.

Despite Mr. Blufords efforts to notify the Warden DeWayne Hendrix, Mr. Sponselor, the Bureau of Prisons Western Regional Office and the Office of Inspector General, no action was taken.

The Defendants actions were reckless, malicious, and negligent, which directly caused them to breach their duty, which caused numerous physical and mental damages to Mr. Bluford. Furthermore, their actions were cruel and unusual which violated Mr. Blufords constitutional rights, and caused Mr. Bluford pain and suffering.

Mr. Bluford has been harmed physically by inmates all due to Mr. Cray and the Defendants actions. Mr. Blufords mental state has deteroriated due to the known adverse effects of isolation.

Claim 13

(Jan 2022 - Feb 2022)

During Mr. Blufords time in the SHU, he was roomed with another inmate named DeAndre Johnston. This inmate was somehow able to get Mr. Blufords home address, and then write Mr. Blufords wife, pretending to be Mr. Bluford, and requesting that she electronically send the inmate (Mr. Johnston) $75,000.00.

Mrs. Bluford upon receiving the first letter filed a police report and contacted the Federal Bureau of Prisons, SIS (Special Investigation Services) at Sheridan, as she knew that her husband didn't mail the letter nor write it as it was not in his handwriting, grammar and puncuation was poor, and many words were misspelled. Nonetheless, despite Mrs. Bluford and Mr. Blufords actions to stop any further letters being sent, several additional letters were sent to Mrs. Bluford via United States Postal Service mail, from the inmate (Mr. Johnston) while he was at the Federal Correctional Institution Sheridan.

Upon Mr. Bluford contacting SIS, (David Prock Jr.) regarding the matter, he (Mr. Prock Jr.) was very condesending and informed Mr. Bluford that he should expect no help from the institution regarding the matter, and furthermore that they would not investigate or make a referral for prosecution of the matter, due to Mr. Bluford filing complaints against staff.

(29)

Mr. Johnston is guilty of mail fraud and conspiracy to commit wire fraud. SIS Lieutenant David Prock Jr., had copies of all the letters (provided to him by Mrs. Bluford) and envelopes that Mr. Johnston mailed and used for his crime(s), yet Mr. Prock Jr. intentionally wanted to deprive both Mr. and Mrs. Bluford of due process, and life/liberty by not reporting or investigating a crime out of retaliation.

Mr. Bluford, Mrs. Bluford, and their attorney contacted the Warden DeWayne Hendrix, the Bureau of Prisons Western Regional Office, Oregon U.S. Attorneys Office, and the Oregon FBI and Postal Inspector. All departments needed more information or a referral/complaint from the institution. None was provided.

The Defendants actions were negligent and malicious, which caused Mr. Bluford to suffer ~~mental~~ mental damages. Furthermore their actions were cruel and unusual which violated Mr. Blufords constitutional rights, and caused him pain and suffering. The Defendants violated Mr. Blufords due process, and equal protection clause, as if Mr. Bluford were not an inmate, Mr. Johnston would be prosecuted.

Claim 14

Mr. Bluford received an extortion letter from an inmate on January 25, 2021. The Federal Correctional Institution Sheridan video footage, from their security ~~footage~~ system shows the inmate going to Mr. Blufords door, the inmate hands Mr. Bluford the letter, and minutes later you see Mr. Bluford eventually leaving the 2A Housing Unit after he learned that the inmate would not give him more than 1 hour to wire $10,000.00 to his agent.

Upon Mr. Bluford leaving the 2A Housing Unit, he and Mr. Cray get into a small verbal confrontation due to Mr. Cray asking Mr. Bluford if he's "learned his lesson"? Nonetheless, the footage shows Mr. Bluford go straight to the Livetenants Office, and remain there for a while. Lt. Cerone read the letter and determined that Mr. Bluford had to be placed in the SHU for safety, while SIS investigates the threat.

Correctional Counselor A. Rodriguez was also in the livetenants office. He (Mr. Rodriguez) became very upset with Mr. Bluford upon Mr. Bluford informing Lt. Cerone that he was informed by the inmates that Mr. Cray had disclosed to them his (Mr. Bluford) cooperation with the FBI, and that Mr. Cray had directly and indirectly threatened Mr. Bluford about doing this previously.

At this point Mr. Rodriguez took over and started making notes and looking things up on the computer regarding Mr. Bluford. Mr. Rodriguez also took possession of the extortion letter which later came up missing.

Upon Mr. Bluford going to the SHU, he was later informed by Mr. Cray that the letter (which compromised him) no longer existed, and sarcastically wished Mr. Bluford "Good luck", as he would now not be able to prove the claims.

Mr. Bluford wrote the Warden, DeWayne Hendrix, the Bureau of Prisons Western Regional Office, and others (DOES 1-99) regarding this, yet no action was taken.

On 6-16-2022, Lt. Cerone became aware of the situation and was upset. He (Lt. Cerone) gave Mr. Bluford a written form confirming in writing and signed by him stating that Mr. Bluford did come to his office on 1-25-2022 with the letter that is now "missing."

The Defendants actions were malicious and negligent, which caused them to breach their duty. Furthermore, their actions were not only cruel and unusual, but criminal (hiding/destroying evidence), and were done to violate Mr. Blufords due process, and deprive him of life, liberty, all while also violating his constitutional rights.

Despite the extortion and hate crime that occurred, SIS Lt. David Prock Jr., said no evidence could be found to support Mr. Blufords claim, and then he wrote Mr. Bluford up and said/claimed that Mr. Bluford lied. No prosecution referral was ever made, which violated Mr. Blufords due process.

and violated the equal protection clause as if Mr. Bluford were not an inmate, the suspects ~~were~~ (inmates who extorted, assaulted and battered) were not prosecuted.

Mr. Bluford endured physical injures from being beat-up, and significant pain and suffering mentally from these actions.

Claim 15

From January 25, 2022 through July 2022,
Mr. Bluford was housed in the SHU at the Federal
Correctional Institution Sheridan. During these months
while Mr. Bluford was in the SHU, he was consistently
denied medical attention and services.

Despite Dr. Grasley and the medical department
(DOES 1-99) knowing that Mr. Bluford had several active
conditions that needed attention, they ignored his
request and neglected him. Mr. Blufords state deteriated
and his legs further deconditioned as well as his chronic
pain increasing. Even Mr. Blufords out of the prison,
third party doctor appointments were cancelled and not
rescheduled.

Upon Mr. Bluford requesting a copy of his medical
record, he found that nearly all of his request for
medical services were discarded/missing, and not part
of the record.

Dr. Grasley and the medical department even went
as far as removing records from Mr. Blufords Kaiser
Medical Records, showing that Mr. Bluford is diagnosised
with Bradycardia, PVC, Palpitation disorder, and an
anxiety disorder, from Mr. Blufords Bureau of Prisons
Medical Records/File.

When Mr. Bluford asked a medical staff as to the
reason to/for these actions, the staff member informed

Mr. Bluford that they didn't know why exactly, however, that they heard to be careful as Mr. Bluford was suing the institution for medical negligence amongst other things.

These actions by the Defendants were reckless, fraudulent, and malicious, which resulted in Mr. Bluford suffering numerous physical and mental injuries. Furthermore, their actions were cruel and unusual, deprived Mr. Bluford, and violated his constitutional rights.

Mr. Bluford wrote the Warden, DeWayne Hendrix, and tried to file a complaint, however no action was taken, and his complaint (Request for Administrative Remedy) was returned to him untouched / filed / ~~unanswered~~ unresponded.

These actions by the Defendants caused Mr. Bluford great pain and suffering both physically (as he had to weather the pain without medication or treatment) and mentally (depression and anxiety).

Claim 16

In June of 2021, Mr. Bluford brought to the attention of his Unit Team (Mr. Cray and Mrs. Ayala-Pena) an error that he discovered regarding his security level score. Initially Mr. Blufords Unit Team said there was no error, however, after Mr. Bluford persisted and worked with the Federal Correctional Institution Sheridans Education Department to verify the error, they then acknowledged the error but didn't want to take any corrective action. Instead, Mr. Cray and Mrs. Ayala-Pena told Mr. Bluford to "just wait until his annual review, for it to be fixed."

Mr. Bluford did not want to wait for his annual review, as the error was causing him to be housed with more violent offenders than what he should have been housed with. Additionally, this was against the Bureau of Prisons policy.

After Mr. Bluford and his attorney reviewed the Bureau of Prisons policy, they learned that the CMC (Case Manager Cooridinator) should be contacted regarding the error, and then that the CMC would contact DSCC through GroupWise.

Both Mr. Bluford and his attorney contacted Mrs. Bunsel who is the CMC, however, again no corrective action was taken. Mr. Bluford was informed to just wait until his annaul review. Upon Mr. Blufords attorney sending Mrs. Bunsel a legal letter warning her of possible liability and negligence, all further communication with Mrs. Bunsel temporaily ceased.

Mr. Bluford would go on to contract Covid-19, be revived and taken to the emergency ~~hospital~~ hospital, suffer additional sicknesses, be assaulted and battered by ~~the~~ inmates, extorted and more, all due to no corrective action being taken by Mrs. Bunsel.

Upon Mr. Bluford suffering these injures and more, Mrs. Ayala-Pena, (Mr. Blufords Case Manager) still refused to follow policy, and yet did the opposite by retaliating against Mr. Bluford. Mr. Bluford wrote Mrs. Bunsel asking for help and a new Case Manager while describing some sensitive complaints to Mrs. Bunsel. Mrs. Bunsels response instead of helping, ~~would~~ taking concern and looking into the matters, decided to forward Mr. Blufords complaint about Mrs. Ayala-Pena to no other than Mrs. Ayala-Pena herself. This resulted in even further retaliation to Mr. Bluford from his Unit Team.

Mrs. Bunsel had a duty, and breached that duty intentionally. Her actions were malicious, cruel and unusual. Mr. Bluford of course attempted to file a complaint (to which it was rejected unresponded to) and write the Warden, DeWayne Hendrix regarding the matter. No response was ever received.

Mrs. Bunsels actions lead to Mr. Bluford suffering numerous physical and mental injures, and furthermore her actions violated Mr. Blufords constitutional rights, were cruel, and caused Mr. Bluford pain and suffering.

Claim 17

In the months of December and January of 2021 and 2022 (starting December 2021 to January 2022) Mr. Bluford was being extorted by inmates. They demanded majority of his commissary, and for him (Mr. Bluford) to have his wife send electronic funds to their agent.

Eventually, Mr. Blufords account balance was depleted, and Mr. Bluford was placed on "FRP Refusal" status. Due to the inmates directing Mr. Bluford to ~~maneuver~~ move his funds around, an FRP payment was not fully deducted from his account for January 2022, and December 2021.

When

Once Mr. Bluford was ~~moved the time guida~~ went to the lieutenants office, he was able to notify staff of this. However, Mrs. Ayala-Pena refused to issue him a new FRP contract, ~~and~~ since he had filed a complaint against her. In fact, Mr. Bluford despite his over 12 request, was no longer able to make any restitution payments for over 6 months due to Mrs. Ayala-Pena's actions.

Mr. Bluford then filed a complaint to the Warden, which was received by the Assistant Warden A. Bills. Mr. Bills refused to investigate the matter, and simply manipulated the facts or failed to take into consideration Mr. Blufords extortion and simply denied Mr. Blufords complaint. This violated Mr. Blufords due process.

Furthermore, when inmates under Mrs. Ayala-Penas caseload ask for new contracts, those who are not of african-american ~~one~~ ethnic get new contracts immediately. ~~Mr.~~ Mr. Bluford believes that Mrs. Ayala-Pena took adverse action against him due to his race, and out of retaliation. This violated the Equal Protection Clause.

Mrs. Ayala-Pena's actions were cruel and unusual and violated Mr. Blufords constitutional rights, causing him pain and suffering. Mr. Bluford was provided no relief and no counseling.

Claim 18

Mr. Bluford was transferred to the SHU at the Federal Correctional Institution Sheridan in January 2022. Mr. Bluford is wheelchair bound and had to be carried down stairs in the housing unit and rolled to his room.

From January 2022 to July 2022 Mr. Bluford was kept in the same cell, despite the Bureau of Prisons policy to move inmates every 21 days to a new room for mental health reasons. In fact, the Bureau of Prisons are quite aware of the adverse effects, depression, anxiety and other mental health issues that can occur due to keeping inmates in the same room for so long.

During these months, all other inmates housed in the SHU were moved, yet Mr. Bluford remained in his room, when the Bureau of Prisons knew from Mr. Blufords medical records that he suffers from an anxiety disorder.

These actions were cruel and unusual. Especially when taking into consideration that the typical stay for an inmate in the SHU is 3.98 weeks, and Mr. Bluford was held there for over 25 weeks.

Mr. Bluford complained and ask for help to the Warden, DeWayne Hendrix, A.W. R. Bills, and Dr. Campagna as he was/is suffering from extreme depression, anxiety and other issues. The Defendants actions violated Mr. Blufords constitutional rights, and caused Mr. Bluford pain and suffering, and were cruel and unusual.

Claim 19

From September 2021 through January 2022, Mr. Cray, Mrs. Ayala-Pena, and Mr. Sponselor refused to assign an inmate care giver to Mr. Bluford, or place him in the 2A Housing Unit ADA cell. When Mr. Bluford asked Mr. Cray, to be moved into the ADA cell, Mr. Cray told him "No", despite Mr. Bluford explaining that he was having extreme trouble moving around in his current room, trouble toileting, showering, etc, Mr. Cray showed no concern.

When Mr. Bluford asked Mrs. Ayala-Pena the same thing, she deflected and told Mr. Bluford that she was going with what Mr. Cray said, and that "he was in charged of room changes".

Mr. Bluford sent a written Inmate to Staff Request form, however, regarding the room change and care giver, yet it was never responded to. Mr. Bluford also contacted Dr. Andrew Grasley and Dr. Campagna, and Warden Hendrix regarding being moved to a more friendly/ compliant ADA housing unit. All of Mr. Blufurds request were ignored and not responded to.

Mr. Bluford could not access hot water, ice, laundry, cleaning supplies as they are located upstairs. Mr. Bluford couldn't even access the law library, unless an inmate(s) would pick him up and carry him upstairs. The Defendants actions violated numerous ADA laws in which Mr. Bluford

(41)

is protected by, as he is wheelchair bound and can not walk. Furthermore, their actions were cruel and unusual, which lead to Mr. Bluford suffering many physical and mental injuries including but not limited to falling, burns in the shower, going without clean clothes, using the bathroom on himself, and many adverse actions in his legal cases as it was painful to have inmates physically assist/carry him up stairs to access these things. In addition, it was very embarrassing, and inmusculating to Mr. Bluford.

The Defendants actions were reckless, and Mr. Cray stated to Mr. Bluford that "the ADA room "was better used as a storage." Their actions were cruel and unusual, and violated Mr. Blufords constitutional rights.

Claim 20

From June 2021 til July 2022, Mr. Bluford suffered from retaliation from the Defendants. Mr. Cray led this campaign of harrassment, and used his nearly 20 years of relationships/bonds within the Bureau of Prisons to retaliate against Mr. Bluford, all due to Mr. Bluford exercising his constitutional rights.

Mr. Cray threatened, bullied, falsified federal documents, and directed inmates to harm Mr. Bluford, all due to Mr. Bluford trying to correct errors, and get to (via transfer) the correct institutional security level that he was supposed to.

Superiors of Mr. Cray and even some colleagues turned blind eyes to his actions. The Warden, DeWayne Hendrix, and Assistant Warden R. Bills, and Mr. Sponselor had duties to investigate Mr. Blufords sensitive complaints, yet failed to do so, therefore enabeling Mr. Crays illegal and criminal actions.

Dr. Grasley and Dr. Campagna have taken oaths to serve their patients, but abandoned those oaths in regards to Mr. Bluford as they grew concerned with liability and covering their negligence, instead of helping Mr. Bluford who was suffering from severe chronic pain, breathing issues, naseau, vomiting, depression, anxiety, and much more.

Correctional Counselor A. Rodrigues, SIS Lt. David Prock Jr., and Mr. Cray even went as far as conspiring

against Mr. Bluford to make evidence in a crime, where Mr. Bluford was the victim, disappear, due to it compromising Mr. Cray.

    Mrs. Ayala-Pena, who was supposed to be Mr. Blufords Case Manager, and have his best interest, instead joined the campaign of harrassement and retaliated against Mr. Bluford by intentionally scoring him wrong, and adding a point to his base score, and refusing to give him a new FRP contract.

    All of the Defendants, including Mrs. Bunsel and DOES 1-99 had a duty, and breached that duty, by not upholding the law, providing reasonable safety to inmates, investigating ~~corp~~ corruption and abuse of power from their colleagues, and ~~not~~ allowing retaliation to take place, or participating in it.

    The Defendants actions were reckless, negligent, cruel and unusual, violated Mr. Blufords due process in some cases, violated ADA laws in some cases, violated the Equal Protection Clause, and violated Mr. Blufords constitutional rights. Their actions caused Mr. Bluford significant pain and suffering.

## IV.  EXHAUSTION OF ADMINISTRATIVE REMEDIES

I have filed for administrative relief as to all claims in Section III and have concluded all administrative appeals available to me.

☑Yes          ☐No

✗ See attachment titled "Exhaustion of Administrative Remedies."

## V.  RELIEF

State *briefly* exactly what you want the court to do for you and the amount, if any, of monetary compensation you are seeking.  Make no legal arguments.  Cite no cases or statutes.

See attached titled "Relief"

I declare under penalty of perjury that the foregoing is true and correct.

Signed this __5__ day of __July__ , 20_22_.

D—B

*(Signature of Plaintiff)*

## Exhaustion of Administrative Remedies

The Plaintiff, Mr. Bluford has tried to exhaust all administrative remedies, however, has been met with so much resistence and retaliation that he could no longer continue on.

First, Mr. Cray, one of the Defendants is the staff member where all "Request for Administrative Remedies" most start. Mr. Cray has threatened Mr. Bluford constantly about filing greivances, and even granted relief to a violent inmate to "take care of" Mr. Bluford, and "make sure he doesn't file any more grievances". That was the last threat that Mr. Bluford could survive out of fear for his life.

Second, Mr. Cray has returned a good portion of Mr. Blufords grievance to Mr. Bluford unanswered and ripped/destroyed. Even grievances sent via usps mail to the BoP Western Regional Office were returned to Mr. Bluford the very next day destroyed, never making it out.

By all means, Mr. Bluford has exhausted all available administrative remedies available to him.

Relief

The Plaintiff, Mr. Bluford ask the court for the following relief:

Nominal & Compensatory Damages

$500,000.00 in damages against each Defendant individually

Punitive Damages

$25,000,000.00 in punitive damages against the Defendants as their actions were motivated by evil motive and intent, and with reckless and callous indifference to the Plaintiffs rights.

Injunction

1) That the Warden order and release Mr. Bluford to Home Confinement

2) That the Warden work with the Oregon United States Attorneys Office, Office of Inspector General, FBI, and Oregon Federal Public Defenders Office to investigate these crimes and prosecute the individuals

3) That there be a new electronic grievance / Request for Administrative Remedy system implemented for inmates

4) That panic/help buttons be installed in all of the SHU rooms located at the Federal Correctional Institution Sheridan

5) That the Federal Correctional Institution Sheridan become fully ADA compliant.

6) That the Warden expunge the fabricated Incident Report that was issued to Mr. Bluford

7) That the Warden contact the appropriate external agencies to ~~investigate and~~ work with the Federal Correctional Institution Sheridan to investigate the crimes that occured to Mr. Bluford by inmates, and then prosecute them

8) That the Warden discharge/terminate the staff involved in this case once internal or court verdicts prove wrongdoing

9) That Mr. Bluford be provided immediate medical attention. And finally, any other relief that the court finds fit.

I declare under penalty of perjury that the foregoing is true and correct. Signed this 5th day of July, 2022.

D— B——
Plaintiff